Clay M. BISHOP et al., Appellants,

v.

Estill HOWARD et al., Appellees.

Court of Appeals of Kentucky.

Nov. 19, 1965.

Rehearing Denied July 1, 1966.

Róy W. House, Clay M. Bishop, Manchester, for appellants.

Denver Adams, Hyden, for appellees.

WILLIAMS, Judge.

The appellees are the joint owners of a tract of coal land in Leslie County. After entering into a lease with appellees, appellants mined a quantity of coal from the area and then ceased operations. Appellees sued in the Leslie Circuit Court claiming they were entitled to additional compensation under the terms of the lease. Special Circuit Judge Don A. Ward entered judgment awarding appellees the sum of $5,997.99, based on his finding of fact. This appeal is taken on the ground that the lower court's finding of fact is clearly erroneous.

The lease entered into by the parties provided that the appellants would pay 25 cents per ton royalty for every ton of coal taken from the property. The tonnage was to be calculated by measurement performed by a competent engineer. It was further provided that appellants were to pay for 90 per cent of the estimated tonnage whether mined or not.

Appellants proved by their engineer that there were 82,540 tons of coal in the entire area. They also proved that they had theretofore paid to appellees the sum of $11,126.-33 for coal actually mined. The trial judge accepted appellants' figures in both those instances and incorporated them in his finding of fact. From the total number of tons estimated to be in the boundary (82,540) he deducted 6,878 tons, which was the estimated amount lying within a 1.22 acre area which proved to be unmineable. He was left with 75,662 tons which in his finding of fact he termed "actually mined," but which he obviously meant "actually mineable." He then applied the 90 per cent factor to the latter figure and from that deduced the appellants owed appellees the sum of $5,997.99.

All parties agree the provision in the lease which provides the appellees should be paid for 90 per cent of the estimated ton-

nage means 90 per cent of the coal that could be mined at a reasonable profit by the use of modern machinery, good mining practices, and sound business management.

The trial judge attempted to determine the number of tons of mineable coal by taking the entire estimated tonnage and deducting the coal which lay in a particular area which was unmineable. In doing this he was on the right track but he did not travel far enough. All parties agree that no mine can be 100 per cent exhausted of its coal. It follows that there is and was a certain amount of coal left in the mine which was not mineable, but for which appellants have been charged. For example, we are told it is necessary to leave pillars of coal standing to avoid subsidence, and that burnouts, washouts, squeezes and other factors combine to reduce the number of mineable tons of coal in a mine.

Appellants' witnesses testified that a 75 per cent recovery is considered good, and in this case appellants were only able to effectuate a 50 per cent recovery. Appellees' witnesses said that something less than 100 per cent recovery was certain. Somewhere between 50 per cent and 100 per cent of the coal was mineable in this instance. We know that the amount situated in an isolated unmineable area and deducted by the trial judge from the total was not mineable. But we also know that there was other unmineable coal which was not deducted.

The finding of fact by the trial judge that there were 75,662 tons of mineable coal in the area was clearly erroneous. He should find the correct number of tons of mineable coal in the area described in the lease and enter judgment calculated on that finding according to the terms set out in the lease.

The judgment is reversed and the case remanded for proceedings consistent with this opinion.